TRUSTEES OF CHRISTIAN UNIVERSITY, Plaintiffs in Error, *v.* HARVEY JORDAN, Defendant in Error.

*Banking, Illegal—Currency.*—The provisions of the act relating to illegal banking (R. C. 1855, p. 286) do not apply to literary, scientific and charitable corporations. The evil the act designed to prevent was the introduction into this State by moneyed corporations, or corporations engaged in business of profit, of the circulation of foreign and worthless bank notes to the injury of the people of the State. (S. C. 29 Mo. 71.)

Christian University v. Jordan.

*Error to Hannibal Court of Common Pleas.*

*H. S. Lipscomb,* for plaintiffs in error.

I. There is no proof that the plaintiffs authorized, assented to, or even knew of the receipt and payment by the treasurer, Hatch, of notes of less denomination than five dollars. The decisions of law asked by the plaintiffs should have been given by the court below.

II. The law plead in bar does not apply to this case. It applies to banking corporations and money dealers only. The 9th section of the act to prevent illegal banking, &c., (R. C. 1855, p. 288,) says " the charters of *all corporations* shall be forfeited " for any violation or evasion of the act. Apply the law to *all,* and there is not a town or city corporation in the State, a church corporation, or even school district or incorporated school, that is not only barred of the collection of its debts, but has forfeited its charter. The learned Judge Scott saw the result of his argument in his opinion, ( 29 Mo. 71,) and wisely, in the face of the positive terms of the statute, limited the law as to the forfeiture of the charter.

There is as much or greater reason for a limit in its application to this corporation ; for if it apply to all, it must work great wrong never intended by the law maker.

It certainly was never intended that the school should be robbed of its debts by the mere act of an agent.

*Glover & Shepley, Hatch & Campbell,* for defendant in error.

I. There was no evidence, that the corporation did not assent, or on which to predicate non-assent.

II. The corporation was bound by the continued conduct of its officer. It is presumed to know what funds it had and that no other could be paid out.

But if the instructions had been given the verdict must have been the same. Therefore this court will not reverse. Again, it will be observed that the corporation (the plaintiff in this suit) was incorporated after the provision in the act concerning illegal banking, on which the defence in this

action is based, had been incorporated into our code of laws. Hence its charter was taken with the knowledge of the existence of the provision on which the defendant bases his defence. (Christian University v. Jordan, 29 Mo. 71.)

BAY, Judge, delivered the opinion of the court.

When this case was in this court before, the only point discussed by counsel and noticed by the court, was whether it was incumbent upon the defendant to show that the treasurer of the corporation had authority from the board of directors to receive and pay out illegal currency. The court very properly decided that, as corporations were ideal, artificial persons, and could act only by and through agents, the authority would be presumed—that if an authorized agent of an incorporated company will for years continue in the violation of law, and is never checked in it, nor his conduct disapproved, that such company could not claim an exemption from the consequences of his acts. But we think another question of far greater importance lies at the foundation of this case, and that is whether the act relating to illegal banking and the circulation of depreciated paper currency has any application to a corporation of this kind.

In construing a legislative act of doubtful import it is necessary to keep in view the object sought to be accomplished by the law-making power. The act in question was evidently intended to suppress an evil which had long existed in our State, and been a source of universal complaint. From the fact that our State bank (the only bank then in the State) was prohibited from issuing notes of a less denomination than five dollars, the small notes of foreign banks constituted the bulk of our paper circulation, and these banks found in many of our moneyed corporations, brokers and exchange dealers willing and active agents in the circulation of their worthless and depreciated paper. As these banks, most of which were wholly irresponsible, became discredited, their notes were bought up by their own agents at a ruinous discount, thus

imposing a heavy loss upon innocent holders, who paid full value for them and received them in good faith.

This iniquitous practice of speculating upon their own paper was a source of large profit to the banks and heavy loss to the people, and to suppress it the Legislature enacted that "no corporation within the limits of this State, (the Bank of the State of Missouri and its branches inclusive,) money broker, or exchange dealer, should pass or receive, within the limits of this State, any bank note or other paper currency of any kind promising or ordering the payment of money or other thing, of less denomination than five dollars," and imposed severe penalties for a violation or evasion thereof, including, in cases of corporations, a forfeiture of their charter.

Looking, then, at the character of the evil and the means employed to check it, we are inclined to the opinion that the Legislature did not intend to embrace corporations which are purely literary, scientific or charitable; for such institutions, from the very nature of their organization, and the limited powers granted them, are incapable of contributing to the evil. But moneyed corporations, or corporations engaged in a business of profit, and whose aim is to make money, and who necessarily receive and pay out large sums of money, are and ought to be included within the provisions of the act, for it is in their power to contribute largely to the circulation of foreign paper. Railroad corporations, for instance, receive and disburse annually hundreds of thousands of dollars, and, if so disposed, might flood the State with the paper of any bank whose irresponsibility was unknown to the people. The same might be said of insurance companies, manufacturing companies, mining companies, and divers other companies in which capital is invested with a view to profit or income.

If, however, we give the broad construction to the act which is contended for, it would include all village and town corporations, incorporated academies and school districts, orphan asylums, hospitals for the sick, lying-in hospitals for indigent and unfortunate females, asylums for the

deaf, dumb, blind, or insane, and in fact every literary or charitable association which may have received at the hands of the Legislature an act of incorporation. Surely the Legislature did not intend to deprive all these of their chartered rights, because some officer or agent may have received or paid out a one dollar note issued by a bank of another State. No possible good, but an incalculable amount of evil and injustice, would result from such legislation. It certainly never occurred to those entrusted with the responsibility of making laws, that in their effort to prevent the circulation of worthless bank paper they were overthrowing all the literary and benevolent institutions of the State. The general tenor, scope and phraseology of the act forbid any such conclusion.

Giving the statute, therefore, a fair and liberal construction, we are of opinion that it has no application to the Christian University, which is solely an educational corporation, and clothed with no other powers than those usually conferred upon similar institutions.

In this view of the case the answer sets up matter which constitutes no bar to the plaintiffs' right to recover; but, as the defendant may wish to avail himself of some other ground of defence, the cause will be remanded.

Judgment reversed and cause remanded. Judge Bates concurring; Judge Dryden not sitting, having been of counsel in the court below.